UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ALICIA BRIGGS,

        Plaintiff,

-against-                                                     **MEMORANDUM AND ORDER**
                                                                                                      10-CV-2265 (RRM)(JO)

WOMEN IN NEED, INC.,

        Defendant.
----------------------------------------------------------X
**ROSLYNN R. MAUSKOPF, United States District Judge:**

       Plaintiff Alicia Briggs ("Briggs" or "plaintiff") brings this *pro se* action against defendant Women in Need, Inc. ("WIN" or "defendant") alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, and the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k) §("PDA"). Briggs alleges that she was unlawfully terminated on the basis of her pregnancy and associated medical issues. Currently before the Court is WIN's motion to dismiss the complaint for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, defendant's motion is DENIED.

## **BACKGROUND**[1]

       Plaintiff is a former employee of WIN, a non-profit corporation located in Brooklyn, New York. (Compl. (Doc. No. 1) at 2-4.) She was terminated on December 11, 2007. (Compl. at 3-4.) Plaintiff informed WIN about her pregnancy in March 2007. (Pl.'s Compl. to New York State Division of Human Rights ("N.Y. Compl.") (Doc. 15-3) ¶ 2.) On May 23, 2007 plaintiff went on a medical leave due to her high-risk pregnancy. (Compl. at 4.) Plaintiff gave birth by cesarean section on October 19, 2007. (*Id.*) Her disability benefits continued until November

---

[1] On a motion to dismiss, the Court must "take[] factual allegations [in the complaint] to be true and draw[] all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted).

28, 2007, six weeks after the delivery of her child pursuant to WIN's 26-week disability plan. (Letter from Unum Provident to Pl. (Doc. No. 1-2).)

At some point either just before or during plaintiff's medical leave, Maureen McLaughlin, a WIN human resources representative,[2] promised plaintiff her desired 8 a.m. to 4 p.m. shift ("8 X 4 shift") upon her return to work. (*See* Pl.'s EEOC Affirmation ("Affirmation") (Doc. No. 4) at 2.) The 8 X 4 shift, plaintiff believed, would best accommodate her needs as a new mother. (*See* Pl.'s N.Y. Compl. ¶ 6.) McLaughlin made this promise, according to plaintiff, as a gesture of sympathy in response to what plaintiff alleges constituted "unfair treatment . . . even before [she] was pregnant." (*See* Affirmation at 2.) Specifically, plaintiff claims she had been promised an 8 X 4 shift but was not given one due to a co-worker's seniority. (*Id.*) Plaintiff also shared with McLaughlin a letter she wrote to WIN's management dated June 18, 2006 that contained further details of her alleged pre-pregnancy unfair treatment. (*Id.*) Plaintiff alleges that in response to hearing about this treatment, "Ms McLaughlin told me how she felt sorry for me and when I had my baby she would make sure I had an 8 X 4 shift." (*Id.*)

During the course of her pregnancy, Briggs kept in contact with McLaughlin, providing her regular updates about her medical condition. (Compl. at 4.) On October 19, 2007, plaintiff gave birth to her child through a caesarean section procedure, and called McLaughlin to share with her the news of the birth. (*Id.*) McLaughlin congratulated plaintiff, and asked her when she would return to work. (Affirmation at 2.) Plaintiff replied that she did not know at the time, but would notify McLaughlin as soon as she received her discharge papers. (*Id.*)

On December 11, 2007, at her six-week check-up, plaintiff's doctor informed her that she could return to work on January 21, 2008 to ensure the wound from the cesarean section had

---

[2] Defendants provide Ms. McLaughlin's official title: "Director of Benefits and Compliance." (Mem. of Law in Supp. of Def.'s Mot. to Dismiss (Doc. No. 17) at 2.)

time to heal properly. (Compl. at 4.) Plaintiff then spoke with McLaughlin to inform her of the doctor's orders, and to reiterate her desire for the 8 X 4 shift. (*Id.*) McLaughlin informed plaintiff, after consulting with the appropriate authorities, that her request for the 8 X 4 shift was denied. (*Id.*) The subsequent factual record, however, is disputed.[3]

Plaintiff alleges that, after being denied her 8 X 4 shift, she requested to speak with Teri Milona[4], presumably another human resources official at WIN. (*Id.*) Milona then informed plaintiff that she had been fired. (*Id.*) According to plaintiff, Milona was, during this conversation, "so rude & disrespectful she told me she didn't care that I had an [sic] C-Section." (*Id.*) When plaintiff inquired as to the reason for her termination, Ms. Milona responded, "So what, you're fired. I'm the boss and I make these decisions." (Pl.'s N.Y. Compl. ¶ 9.) Plaintiff subsequently learned that the official date of her termination was "on or about November 21, 2007," approximately three weeks prior to this conversation. (*Id.* ¶ 10.) Plaintiff further alleges that she did not receive a termination letter from WIN. (*Id.*) Upon learning of her termination, plaintiff asked to be transferred to another building. (*Id.* ¶ 7.) Although, as plaintiff claims, other employees had previously been granted transfers by WIN, plaintiff was informed that WIN does not "allow transfers" and WIN denied plaintiff's request to rescind her termination. (*Id.*)

Defendant does not dispute that WIN denied plaintiff's request for an 8 X 4 shift upon her return from medical leave or even that plaintiff had been promised that shift. (*See* Mem. of Law in Supp. of Def.'s Mot. to Dismiss (Doc No. 17) at 3.) Rather, defendant disputes the circumstances of plaintiff's termination. According to defendant, after WIN denied plaintiff's

---

[3] In support of its motion, defendant submitted evidence by affidavit that goes outside of the pleadings. The Court declines to convert this motion to one for summary judgment. For purposes of this Motion, the Court will consider only the factual allegations in plaintiff's Complaint and take them as true, and draw in plaintiff's favor all reasonable inferences therefrom.
[4] Though plaintiff refers to Ms. Meloni in her Complaint, and defendants to Ms. Milona by Affidavit, the Court assumes this is the same individual.

request for the 8 X 4 shift, "Plaintiff would not agree to work her assigned schedule" and was accordingly terminated. (*Id.*)

Following plaintiff's termination, WIN offered plaintiff her position back. (Affirmation at 2.) Plaintiff, however, declined WIN's offer. (*Id.*) According to plaintiff, by the time WIN offered her the position back, she had already found another job. (*Id.*)

Plaintiff filed charges with the New York State Division of Human Rights on September, 23, 2008. (Pl.'s N.Y. Compl.) These were adopted by the Equal Employment Opportunity Commission ("EEOC") which issued a Right to Sue Letter on March 15, 2010. (*See* Affirmation at 1.)

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the court to examine the legal sufficiency of a complaint. As required by Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999). A court considering a 12(b)(6) motion must "take[] factual allegations [in the complaint] to be true and draw[] all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted). A

complaint need not contain "'detailed factual allegations,'" but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, the plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). The determination of whether "a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–158 (2d Cir. 2007)).

In *Swierkiewicz v. Sorema N.A.*, the Supreme Court rejected the notion that there is a heightened pleading standard in discrimination cases, holding that the survival of a complaint in an employment discrimination case does not rest on whether it contains specific facts establishing a prima facie case under the standard set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). 534 U.S. 506, 510 (2002) ("The *prima facie* case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement."); *see also Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 71–72 (2d Cir. 2006) (applying *Swierkiewicz* to retaliation claims); *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 591 (2d Cir. 2006) (applying *Swierkiewicz* to discrimination claims under Title VII).

Moreover, the Second Circuit has held that the framework articulated in *Swierkiewicz* for analyzing whether a plausible claim for discrimination has been pleaded remains viable in the

5

wake of *Twombly* and *Iqbal*. *See, e.g.*, *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120–21 (2d Cir. 2010) ("[A]lthough *Twombly* and *Iqbal* require factual amplification [where] needed to render a claim plausible, we reject [appellant's] contention that *Twombly* and *Iqbal* require the pleading of specific evidence or extra facts beyond what is needed to make the claim plausible." (internal quotations and citations omitted)); *Boykin v. Key Corp.*, 521 F.3d 202, 213 (2d Cir. 2008) (noting that *Twombly* "affirmed the vitality of *Swierkiewicz*, which applied a notice pleading standard, and explained that its decision did not 'require heightened fact pleading of specifics.'"); *Gillman v. Inner City Broad. Corp.*, No. 08 Civ. 8909 (LAP), 2009 WL 3003244, at *3 (S.D.N.Y. Sept. 18, 2009) ("*Iqbal* was not meant to displace *Swierkiewicz*'s teachings about pleading standards for employment discrimination claims because in *Twombly*, which heavily informed *Iqbal*, the Supreme Court explicitly affirmed the vitality of *Swierkiewicz*."); *accord E.E.O.C. v. Propak Logistics, Inc.*, No. 1:09-cv-311, 2010 WL 3081339, at *5 (W.D.N.C. Aug. 6, 2010) ("[E]ven after *Twombly*, an employment discrimination plaintiff is not required to plead specific facts but may rely on notice pleading requirements." (citing *Boykin*, 521 F.3d at 212–15)).

While *pro se* plaintiffs must satisfy these pleading requirements, federal courts are "obligated to construe a *pro se* complaint liberally." *See Harris*, 572 F.3d at 71-72 (citations omitted). In other words, trial courts hold *pro se* complaints to a less exacting standard than they apply to complaints drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Boykin*, 521 F.3d at 213-14 (citation omitted). Since *pro se* litigants "are entitled to a liberal construction of their pleadings, [their complaints] should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (citation and internal quotation marks omitted). When a *pro se* plaintiff has altogether failed to satisfy a pleading

6

requirement, however, the court should not hesitate to dismiss his complaint. *See Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997) (citation omitted).

Moreover, under 28 U.S.C. § 1915(e)(2)(B), this Court is required to dismiss a complaint, filed *in forma pauperis*, if it is "(i) frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary relief from a defendant who is immune from such relief." An action is frivolous as a matter of law when, *inter alia*, it is based on an "indisputably meritless legal theory" – that is, when it "lacks an arguable basis in law," or when "a dispositive defense clearly exists on the face of the complaint." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). As under the 12(b)(6) standard, plaintiff's *pro se* status obligates this Court to read her papers liberally and to interpret them as raising the strongest arguments they suggest. *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) (citation omitted); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). If a liberal reading of the pleading "gives any indication that a valid claim might be stated," this Court must grant leave to amend. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## DISCUSSION

### I. Pregnancy Discrimination Act

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2006). Congress enacted the PDA in 1978, stating, "for all Title VII purposes, discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex." *Automobile Workers v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991); *see* 42 U.S.C. § 2000e(k) (2006). The PDA provides that

> [t]he terms "because of sex" or "on the basis of sex" include, but are not limited to, because or on the basis of pregnancy, childbirth,

> or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work.

42 U.S.C. § 2000e(k).

The aim of the PDA is to ensure that employers treat pregnant employees identically to other temporarily disabled employees. *See Moawad v. Rx Place*, No. 95 CV 5243(NG), 1999 WL 342759, at *6 (E.D.N.Y. May 27, 1999); *Mazzella v. RCA Global Commc'ns, Inc.*, 642 F. Supp. 1531, 1548 (S.D.N.Y. 1986) ("Title VII prohibits employers from treating pregnant employees differently than other employees with predicable future disabilities."). "Unless the employee on leave has informed the employer that she does not intend to return to work, her job must be held open for her return on the same basis as jobs are held open for employees on sick or disability leave for other reasons." 29 C.F.R. Pt. 1604, App.

An employment practice is unlawful in contravention of the PDA when pregnancy is "a motivating factor" for an adverse employment action. *See Calabro v. Westchester BMW, Inc.*, 398 F. Supp. 2d 281, 287 (S.D.N.Y. 2005) (citing *McDonnell Douglas*, 411 U.S. at 802). The burden of proving unlawful discrimination falls on the employee in PDA cases. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). A plaintiff asserting a claim pursuant to the PDA thus bears the ultimate burden of establishing discrimination "because of" that employee's pregnancy or pregnancy-related condition. *See* 42 U.S.C. §§ 2000e-2(a)(1), (2); *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir. 1995) (citing *Gallo v. Prudential Residential Serv., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994)) ("The plaintiff has the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against her on account of her pregnancy."). The plaintiff in this case offers no direct evidence to support her PDA claim; thus it must be analyzed under the familiar burden-shifting framework laid out in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1971). *See Ascione v. Pfizer, Inc.*, 312 F. Supp. 2d 572, 576 (S.D.N.Y. 2004) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)).

The plaintiff has the burden of first establishing a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. The plaintiff must show: (1) membership in a protected class; (2) that she was qualified for her position; (3) that she suffered an adverse employment action; and (4) that there exists a nexus between the pregnancy and the adverse employment action. *See Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998); *Shafrir v. Ass'n of Reform Zionists of Am.*, 998 F. Supp. 355, 360 (S.D.N.Y. 1998) (citing *McDonnell Douglas*, 411 U.S. at 802). Plaintiff's burden in establishing a prima facie case is *de minimis*. *See Kerzer*, 156 F.3d at 401. It is undisputed that plaintiff suffered an adverse employment action here. Thus, the Court will examine the three remaining prongs of the prima facie test.

    A. <u>Member of a Protected Class</u>

Under the PDA, a plaintiff must show that her discharge occurred while she was "affected by pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). Thus, the plain language of the statute covers not only pregnancy, but also childbirth and related medical conditions. *See Shafrir*, 998 F. Supp. at 363 (stating that PDA applies where plaintiff terminated while on maternity leave because of her childbirth). One need not be pregnant at the time of termination to be a member of the PDA's protected class; rather, this determination is made on a case by case basis. *See Helmes v. S. Colonie Cent. Sch. Dist.*, 564 F. Supp. 2d 137, 147 (N.D.N.Y. 2008). Courts have found that an employee terminated while pregnant, on maternity leave, or soon after returning from maternity leave, is a member of the protected class. *Id.* (holding plaintiff to be a member of protected class where she suffered an adverse employment

action nine weeks after she returned from maternity leave); *see also Quaratino*, 71 F.3d at 64 (agreeing plaintiff was a member of the protected class where plaintiff was terminated less than four months after giving birth); *Jones v. Hosp. of Univ. of Pa.*, No. 03-CV-4938, 2004 U.S. Dist. LEXIS 15711, at *14 (E.D. Pa. Aug. 5, 2004) (holding plaintiff terminated two-and-a-half months after giving birth, and one week after returning to work, demonstrated sufficient temporal proximity to be a member of PDA's protected class); *Shafrir*, 998 F. Supp. at 363 (holding plaintiff to be a member of protected class under PDA "[e]ven though plaintiff was neither pregnant nor ill at the time she was discharged, she had recently given birth and was on maternity leave.").

The time at which the plaintiff ceases being "affected by pregnancy, childbirth, or related medical conditions" depends on the facts and circumstances of the particular case. *See Helmes*, 564 F. Supp. 2d at 147; *Keller v. Great Lakes Collection Bureau, Inc.*, No. 02-CV-0719C(F), 2005 WL 2406002, at *4 (W.D.N.Y. Sept. 29, 2005) (holding that plaintiff not a member of the protected class since she had not been pregnant for two years); *Solomen v. Redwood Advisory Co.*, 183 F. Supp. 2d 748, 454-55 (E.D. Pa. 2002) (holding that plaintiff who was terminated eleven months after giving birth not a member of PDA's protected class). Furthermore, leaves-of-absence for childrearing purposes are not conditions protected under the PDA. *See Moawad*, 1999 WL 342759, at *6.

Here, plaintiff has alleged sufficient facts to claim that she was a member of the PDA's protected class. Plaintiff was terminated on some date between November 28, 2007 and January 21, 2008. As plaintiff gave birth on October 19, 2007 and continued to recover from her cesarean section until her doctor cleared her to return to work on January 21, 2008, at most the termination occurred three months after the birth of her child, and most likely occurred while she

was recovering from her cesarean section, a medical condition related to her pregnancy. Thus even though plaintiff was not pregnant at the time of her termination, there is sufficiently close temporal proximity between her childbirth and related medical condition and her termination to make her a member of the protected class for the purposes of this motion.

B. Qualified for the Position

Under the second prong, the plaintiff need make only a minimal showing of qualification, that is, that "she 'possesses the basic skills necessary for performance of [the] job.'" *Owens v. N.Y.C. Hous. Auth.*, 934 F.2d 405, 409 (2d Cir. 1991) (quoting *Powell v. Syracuse Univ.*, 580 F.2d 1150, 1155 (2d Cir. 1978)). The employee need not show that she was a perfect or even an average employee – to require this showing would force the plaintiff to prove the absence of the second prong of the *McDonnell Douglas* test. *See Powell*, 580 F.2d at 1155.

Here, plaintiff has pleaded sufficient facts to meet the minimal showing that she was qualified for her position. Defendant argues that plaintiff was unqualified for her position since she refused to work her assigned schedule. However, plaintiff's complaint alleges that she was terminated on December 11, 2007; her failure to report to work a month after her termination does not show that she was unqualified. Defendant puts forth no other facts to indicate plaintiff was unqualified. Thus she has sufficiently pleaded facts to show her qualification for her position.

C. Inference of Discrimination

The fourth prong requires showing "either that plaintiff's position was filled by a non-pregnant employee or that the plaintiff's discharge occurred under circumstances that give rise to an inference of discrimination." *Hill v. Dale Elec. Corp.*, No. 03 Civ. 5907(MBM), 2004 WL 2937832, at *3 (S.D.N.Y. Dec. 19, 2004); *see Shafrir*, 998 F. Supp. at 360. A plaintiff may

satisfy the fourth element by demonstrating that the position remained open after her discharge and was filled by a non-pregnant employee. *See Quaratino*, 71 F.3d at 64; *Helmes*, 564 F. Supp. 2d at 148. However, when the position is filled by a non-pregnant employee who nevertheless falls into the PDA's protected class due to being "affected by childbirth or related medical conditions," an inference of discrimination does not arise. *See Helmes*, 564 F. Supp. 2d at 148.

To raise an inference of discrimination "the PDA does not require that the termination occur during the pregnancy." *Bond v. Sterling, Inc.*, 997 F. Supp. 306, 309 (N.D.N.Y. 1998). Rather, the statute is meant to protect against discrimination "before, during, and after [a woman's] pregnancy." *Donaldson v. Am. Banco Corp.*, 945 F. Supp. 1456, 1464 (D. Colo. 1996) (quoting 124 Cong. Rec. 38574 (1978)). Temporal proximity between the plaintiff's termination and her pregnancy, childbirth, or related medical condition can raise an inference of discrimination. *See Bond*, 997 F. Supp. at 309 (holding that the plaintiff's allegation that she was terminated two weeks after returning to work and one month after giving birth was sufficient for purposes of both membership in the protected class and an inference of discrimination) (citing *Fejes v. Gilpin Ventures, Inc.*, 960 F. Supp. 1487, 1493 (D. Colo. 1997); *Donaldson*, 945 F. Supp. at 1464-65). However, courts have noted that an inference of discrimination arises from temporal proximity between the plaintiff's termination and the announcement of her pregnancy or her request for maternity leave only when accompanied by other circumstantial evidence. *See Pellegrino v. Cnty. of Orange*, 313 F. Supp. 2d 303, 315 (S.D.N.Y. 2004) (citing *Flores v. Buy Buy Baby, Inc.*, 118 F. Supp. 2d 425, 431 (S.D.N.Y. 2000)); *compare Rinsler v. Sony Pictures Entm't*, No. 02-Civ. 4096(SAS), 2003 WL 22015434, at *6 (S.D.N.Y. Aug. 25, 2003) (finding no "suspicious timing" where relying solely on temporal proximity, and the termination occurred three months after company found out about pregnancy) *with Smith v. K & F Indus., Inc.*, 190

12

F.Supp.2d 643, 649 (S.D.N.Y. 2002)(finding inference of discrimination where termination occurred one month subsequent to disclosure of pregnancy); *Flores*, 118 F. Supp. 2d at 430-31 (same); *Klausner v. Indus. Risk Insurers, Inc.*, No. 98 Civ. 1267, 1999 WL 476285, at *4 (S.D.N.Y. July 8, 1999)(same).

  Here, taking the factual allegations as true, plaintiff has adequately alleged facts to raise an inference of discrimination. Plaintiff's complaint clearly shows a close temporal proximity between her pregnancy and three key events: the denial of her desired shift, denial of a transfer, and her termination. Plaintiff alleges that she had been out on documented medical disability due to her high-risk pregnancy, medically-complicated birth, and continuing medical issues relating to her recovery. Throughout her leave, plaintiff kept in close touch with WIN's human resources department, and explicitly and repeatedly indicated that she sought the day shift as a reasonable accommodation following her difficult pregnancy. On December 11, 2007, Plaintiff was certified by her doctor to return to work on or about January 21, 2008 and she provided that documentation to WIN. Instead, she was terminated, effective that very same day, without ever receiving a notice of termination. Upon learning of her termination, plaintiff asked to be reinstated and transferred to another location; both requests were denied. As plaintiff alleges, she never received a termination letter, and, was ultimately offered her job back; however, plaintiff had already found new employment. Taking her allegations as true and drawing all reasonable inferences in plaintiff's favor, plaintiff has met her burden of alleging sufficient facts to raise an inference of discrimination at this stage of the litigation.

## **CONCLUSION**

For the reasons stated above, defendant's motion to dismiss (Doc. No. 16) is DENIED. This matter is recommitted to the assigned magistrate judge for supervision of discovery and all other pre-trial matters.

                                      SO ORDERED.

Dated: Brooklyn, New York             *Roslynn R. Mauskopf*
       August 24, 2011                 _____
                                                ROSLYNN R. MAUSKOPF
                                                United States District Judge